Rupp *v.* Lobach.

---

MICHAEL RUPP *v.* WILLIAM LOBACH and JOHN F. SCHEPELER.

The charterer of a vessel is liable for demurrage, although the delay was caused by the laws of a foreign country forbidding an entry at the place of lading, and requiring the vessel to be entered at another port, before receiving her cargo.

The master who signs a charter party, payable to himself, may collect or assign the charter moneys and claims for demurrage, &c., in his own name.

ACTION upon a charter party, commenced by the special assignee of the master of the brig "Toledo," for the recovery of demurrage from the charterers. The following statement of the

facts is taken from the opinion of Judge A. A. Phillips, giving the judgment of the Marine Court in favor of the plaintiff:

On the 28th of October, H. J. Henningway, the master of the brig, concluded with the defendants a charter party for her, by which the brig was to make a voyage from New York to Laguna, and bring from thence a cargo of logwood to this city. Twenty running days from the time when the captain should report himself ready to receive cargo, were allowed to load the brig at Laguna, and for each and every day's detention by default of defendants, or their agent, thirty silver dollars should be paid for each day to the master. Prior to the execution of the charter party, it was discussed by the captain and the defendants, as to whether Laguna was a port of entry, and whether the brig could land there direct without proceeding to any other port for a permit. At the defendants' request, the captain proceeded with them to the office of the Mexican consul, and, upon inquiry, they were informed by the consul that there was no impediment to the brig's proceeding direct to Laguna, and loading there. Upon this assurance the charter party was executed. The brig proceeded to Laguna, and arrived there on the 15th of November. The following day the captain reported the brig to the agent of defendants as ready to receive cargo, when it was ascertained that, by some regulation of the revenue laws of the Mexican government, Laguna had ceased to be a port of entry, and that the brig could not take her cargo until she had obtained the necessary papers from the custom house. The defendants' agent recommended the captain to go to Vera Cruz for that purpose, which he did; whereby the plaintiff claims that the vessel was detained twelve days, for which he claims demurrage. The master assigned the charter party to the plaintiff, who brings the action.

*Samuel L. M. Barlow* and *Jeremiah Larocque*, for the defendants.

*Charles L.* and *Erastus C. Benedict*, for the plaintiff.

By THE COURT. INGRAHAM, FIRST J.—The plaintiff seeks to recover from the defendants, on a charter party, for demurrage of the vessel and expenses in going from Laguna to Vera Cruz to enter the vessel.

The vessel was chartered for Laguna, under information from the Mexican consul in New York, that she could go direct to Laguna and enter there. Upon arriving at that port, the public authorities refused to allow the entry of the vessel, and, at the request of the consignees, the captain went to Vera Cruz and then returned to Laguna. The captain reported himself as ready to receive cargo on the 16th instant, according to the provisions of the charty party, and after his return from Vera Cruz, he received a cargo, and sailed on the 17th of December. The time occupied in going to Vera Cruz and returning was from 21st November to the 31st November, (9 days,) on which day the vessel was again reported to the consignees. The loading was completed within nineteen days after this notice.

The Marine Court gave judgment for the plaintiff for $330, being for eleven days' demurrage. If the plaintiff has a right to recover at all, it is for that amount. The whole number of days' detention, from the arrival at Laguna to the sailing for New York, was thirty-one days, and deducting twenty days, as allowed by the charter party, the demurrage would be for those eleven days, if any was to be allowed. The decision of this question depends entirely upon the liability of the charterers to pay for the time consumed in going to Vera Cruz, to enter the vessel before she could be loaded. Exclusive of that time, she was loaded within the twenty days.

It cannot be presumed that either party was cognizant of the necessity of going to another port to enter the vessel before loading. The evidence shows that both parties had the information communicated by the Mexican consul, but which proved to be erroneous.

The court below, upon the trial of the case, held that the charterer was liable, and, I think, in compliance with the true interpretation of the contract. The defendants undertook to

furnish the cargo within twenty days after notice from the captain that he was ready to receive the cargo. He so reported himself on the 16th November.

In the charter party there is no exception of restraints of foreign governments, as is usual, or of any other nature. The owners contracted that the vessel should go to Laguna and back to New York, with a cargo from Laguna. The freighter agreed to furnish a cargo from Laguna, of logwood; and the parties mutually agreed that the lay days should be for loading, twenty days at Laguna, from the time the captain reported himself ready to receive cargo. There is no evidence in the case that the freighter was ready at the time to furnish cargo. I doubt whether he had any right to inquire further than the notice of the captain that he was ready. He should have then offered the freight according to contract, and if the captain, from any cause on his part, did not receive it, a different question from the present one would arise. Instead of doing so, the consignees of the vessel, under the stipulations of the charter party, who were also the defendants' agents, sent the vessel to Vera Cruz to be entered, and did not offer to load till after her return.

The demurrage provided for in the charter party is for delays by default of the party of the second part, or freighters.

There are various cases in which, under such stipulations, the freighters have been held liable for delays occasioned by matters beyond their control. In *Barrett* v. *Dunton*, 4 Camp. 333, freezing of the river, which prevented loading, did not excuse the charterer.

In *Medeiros* v. *Hill*, 8 Bingham, 231, a blockade of the port where the cargo was to be delivered, was held to be no excuse. The court says, "No difficulties attending the performance of the contract can be set up as an excuse for its non-performance. The rule of law applies, that where a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident, by inevitable necessity, because he might have provided against it by his contract."

In *Baker* v. *Hodgson*, 3 Marsh. & S. 267, the prevalence of an infectious disease at the port, in consequence of which all public intercourse was prohibited, was no excuse.

Lord Ellenborough says, if the freighter was unable to load the vessel, is he not answerable for it upon the covenant? The question is, on which side the burthen is to fall. If the performance of the covenant had been unlawful by this government, (England,) the contract would have been dissolved, but if, in consequence of events which happen at a foreign port, the freighter is prevented from furnishing a loading there, where he has contracted to furnish, the contract is neither dissolved, nor is he excused from performing it, but must answer in damages.

In *Sjoerds* v. *Luscombe*, 16 East, 201, an embargo at the port of loading was held to be no excuse for the freighter. Lord Ellenborough there said, the restraint of the government would not operate as an excuse for the freighters who are to load the goods on board at all events, even if by the law of the country it could not be done, but for the ship owner who covenanted with that exception. I assume the fact, that the embargo prevented the loading of the cargo, but the result of *Blight* v. *Page* is, that if the freighter undertake what he cannot perform, he shall answer for it to the person for whom he undertakes.

In *Bessey* v. *Evans*, 4 Camp. 131, it was held that the freighter was not excused from the payment of demurrage, where the delay was occasioned by the act of custom house officers in unlawfully seizing a part of the cargo.

In *Leer* v. *Yates*, 3 Taunt. 387, the delay of getting out goods belonging to third persons, which were on the top of the cargo, was held not to excuse from demurrage the party whose goods were underneath, and who in consequence could not unload them.

In *Randall* v. *Lynch*, 2 Camp. 356, delay in getting the vessel into the London docks, furnished no excuse to the freighter.

The case of *Duff* v. *Lawrence & Van Zandt*, 3 Johns. Cases,

162, more nearly resembles the present case.  In that case the vessel was chartered for a cargo to Cadiz or other ports named.  Upon arriving at the port she performed a quarantine of seven days, and in consequence of having been in an English port, was by the laws not allowed to enter at Cadiz.  No permission to enter could be obtained until after two months' delay.  The consignee, however, requested the delay, and the court held the charterer liable for demurrage.

In the opinions delivered in those cases, it is intimated that a temporary prohibition in making the entry would not expose the freighter to a charge for demurrage, but if the prohibition is permanent, and the consignee or agent of the freighter requests the delay, demurrage is recoverable.

There is some difficulty in reconciling some of the expressions in these opinions with the other cases before referred to, but there is enough in all of them which does not conflict with the other cases, from which the conclusion may be drawn, that where the freighter undertakes to load a vessel within a given number of days, and pay demurrage thereafter, he becomes liable for delay after the lay days have expired, although such delay has been produced in part by an inability to enter the vessel at the port where the cargo was to be loaded, if the agent of the freighter assents to the delay, and directs the captain to go to another port to make such entry.

Another question in this case arises as to the right of the master to assign this claim for demurrage.

The charter party purported to be made by the captain, as master and agent of the owners of the vessel, of the one part, and Lobach & Schepeler of the other part, and was signed by Henningway, the master, and Lobach & Schepeler.

The assignment is by Henningway, in his own name, and purports to assign to the plaintiff the charter party, and all claims which Henningway has arising out of said charter, or by virtue thereof, including claims for demurrage.

By the charter party the demurrage is to be paid to the party of the first part or agent.

The master has a right, in a foreign port, to enter into a

charter party, it being within the scope of his employment and duties. (Abbott on Ship. 125, 126.) He is liable upon all charter parties and bills of lading signed by him. (Id. 133.)

This contract is made by the master, in his own name. The freight and demurrage are made payable to him. The contract does not purport to be with any other person than the master. The master may collect the moneys that come due upon it in his name, and I think there can be no doubt of his right to assign such claim to another for value. My conclusions are, that the judgment should be affirmed.

Judgment affirmed.